165 F.3d 34
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Dion THURMAND Defendant-Appellant.
 No. 98-2208.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 17, 1998.
Decided Nov. 25, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 98 CR 10003. Michael M. Mihm, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOHN L. COFFEY, Hon. JOEL M. FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Dion Thurmand pleaded guilty to one count of conspiracy to distribute marijuana and received a ten-year sentence Pursuant to 21 U S C §§ 841(b)(1)(D) and 846, the otherwise applicable five-year maximum penalty was doubled on account of a previous felony drug conviction Thurmand appeals his sentence, claiming that the use of his 1990 conviction to enhance his sentence violated due process, that the sentencing court relied on unreliable evidence, and that the district court did not make proper relevant conduct findings. We affirm.
 
 I. Facts
 
 2
 Between 1992 and 1996, Thurmand was the leader of a drug conspiracy in Peoria, Illinois, that distributed marijuana and cocaine. During the conspiracy, Thurmand's organization distributed roughly 2.7 kilograms of crack cocaine, 11.6 kilograms of cocaine, and 7.7 kilograms of marijuana.[1] On April 29, 1996, a police informant bought $50 worth of marijuana from Thurmand in a controlled buy at Thurmand's house. After the buy, officers obtained a search warrant and found the marked buy money on Thurmand's person.
 
 
 3
 On March 20, 1997, Thurmand was indicated on one count of conspiracy to distribute cocaine, and one count of attempting to possess cocaine base with intent to distribute. A superseding indictment broadened the conspiracy charge to allege that Thurmand also had conspired to distribute powder cocaine and marijuana Thurmand later pleaded guilty to a one-count information charging him with conspiracy to distribute less than 50 kilograms of marijuana The indictments were dismissed
 
 
 4
 Thurmand's presentence report (PSR) recounts statements from codefendants and other conspirators that detail Thurmand's numerous cocaine and marijuana transactions during the course of the conspiracy Thurmand obtained his drugs in California and Chicago and brought them back to Peoria, where members of his organization would sell them
 
 
 5
 The district court sentenced Thurmand to the statutory maximum sentence, which was enhanced to ten years because Thurmand had a prior Illinois felony drug conviction. Thurmand also received a four-year term of supervised release and a fine of $ 2,000.
 
 II. Analysis
 
 6
 On appeal, Thurmand argues that using his prior conviction to double his sentence violates due process, that the government failed to prove with reliable evidence that he was involved with cocaine or crack, and that the district court did not make the required factual findings for his relevant conduct.
 
 A. Sentence Enhancement
 
 7
 Thurmand first argues that due process forbids the use of his 1990 Illinois conviction to enhance his federal sentence because the Illinois court never warned him of this collateral consequence when he pleaded guilty to the state charge. 21 U.S.C. § 841(b)(1) doubles the maximum sentence of marijuana offenders who have a "prior conviction for a felony drug offense" Thurmand, without citing any authority, "respectfully requests that due process allow an exception to enhancement for a prior dismissed, simple possession case where Defendant was never admonished as to the double Federal penalty"
 
 
 8
 21 U.S C § 851 regulates the use of prior convictions to enhance sentences pursuant to § 841(b)(1) The government argues that Thurmand's challenge is a collateral attack barred by 21 U.S.C § 851(e)'s statute of limitations, which states that "[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." This absolute bar does not itself violate Thurmand's due process rights. See United States v. Magana, 118 F.3d 1173, 1209-1210 (7th Cir.1997), cert. denied, 118 S.Ct. 1104 (1998), United States v. Arango-Montoya, 61 F.3d 1331, 1336-38 (7th Cir.1995). Thurmand's prior conviction was in 1990, well more than five years prior to his 1998 information Therefore, to the extent that Thurmand's argument is an attack on his prior conviction, his argument is barred.
 
 
 9
 To the extent that Thurmand argues that his conviction should not be used to double his sentence because his conviction has been dismissed pursuant to Illinois law, his argument is foreclosed by United States v. McAllister, 29 F.3d 1180 (7th Cir.1994). Illinois allows certain first-time felons to serve a sentence of probation, and after the probation is successfully completed, the conviction will be discharged See 720 ILCS 570/140(f)-(g) (formerly codified as Ill. Rev Stat. ch 56 1/2 § 1410) McAllister held that a guilty plea leading to a sentence of probation under this section constitutes a "conviction" for purposes of enhancement under § 841(b) See McAllister, 29 F.3d at 1185 Thurmand contends that his argument is not inconsistent with McAllister, but this is not so. McAllister required the district court to enhance Thurmand's sentence on account of his previous felony drug conviction.
 
 B. Drug Quantity
 
 10
 Thurmand next argues that the court relied on unreliable evidence when it determined the quantity of drugs attributable to him. Thurmand asserts that no reliable evidence connects him to the nearly 2.5 kilograms of crack and more than 12 kilograms of powder cocaine attributed to him in the presentence report. He points out that law enforcement officers only bought or seized marijuana from him, and he asserts that the PSR cannot be trusted because the cocaine allegations are hearsay from convicted felons who had something to gain from cooperating with the government.
 
 
 11
 This court reviews drug quantity determinations for clear error. See United States v. Burns, 128 F.3d 553, 554 (7th Cir.1997). While the rules of evidence do not apply in sentencing proceedings (and thus there is no prohibition against using hearsay evidence at sentencing), a defendant must be sentenced on the basis of only reliable evidence. See United States v. McEntire, 153 F.3d 424, 435 (7th Cir.1998). A court is entitled to rely entirely on the content of a PSR when imposing sentence, provided that the facts bear "sufficient indicia of reliability." United States v. Burke, 148 F.3d 832, 835 (7th Cir1998) (quoting United States v.. Edwards, 115 F.3d 1322, 1327 (7th Cir1997)), petition for cert. filed, No. 98-6632 (Oct. 26, 1998). One way a PSR can have sufficient indicia of reliability is when it is based on multiple "largely consistent and mutually-corroborating accounts" from people with "first-hand knowledge of the drug-distribution network." United States v. Taylor, 72 F.3d 533, 543 (7th Cir.1995). Moreover, we have noted that "it is unrealistic for a criminal defendant to expect that government witnesses (in this case, the cooperating individuals who provided information to the probation department and to law enforcement officers) 'possess the credibility of people of the cloth." ' Id. at 544 (quoting Rodriguez v. Peters, 63 F.3d 546, 563 n. 14 (7th Cir.1995)). Obviously, many people with first-hand knowledge of how a particular drug conspiracy works will be members of the conspiracy themselves.
 
 
 12
 The factual findings in the PSR are detailed, overlapping, and supported by physical evidence. Thurmand claims that no "tangible evidence" links cocaine to him. First, uncorroborated testimony of coconspirators is sufficient evidence to support a conviction, and thus is also enough to support a drug quantity determination. See United States v. Byerley, 999 F.2d 231, 235 (7th Cir.1993) Moreover, Thurmand's assertion is factually incorrect. Ray King, one of Thurmand's workers, informed police that Thurmand received cocaine in packages from California delivered by UPS Based on this information, police notified UPS to watch for packages from California to be delivered to any address on Thurmand's street.
 
 
 13
 UPS notified the investigating agents of a package with a false return address to be delivered to Moses Walker, Jr, two blocks from Thurmand's house. A drug dog alerted officers to the presence of contraband in the package The officers obtained a search warrant for the package, which contained a propane tank filled with over 900 grams of crack. The officers resealed the package and an agent posing as a UPS employee delivered the package Charles Faulkner, another of Thurmand's workers, said that Thurmand called him and told him to retrieve the package Faulkner went to the house where the package had been delivered, but no one was there so he left Faulkner stated that Thurmand told him to return to the house and retrieve a box that was inside the package Faulkner was arrested in his car with the box full of crack before he could return to Thurmand. Thus the many cooperating witnesses' statements in the PSR were supported by physical evidence that Thurmand was dealing cocaine.
 
 
 14
 The PSR met the government's burden of proving drug quantity by a preponderance of the evidence. Thurmand has not brought forth any evidence showing that the district court's quantity finding is clearly erroneous. Therefore, we will not upset the district court's drug quantity finding.
 
 C. Relevant Conduct Findings
 
 15
 Thurmand's last argument is that the district court did not make sufficient factual findings to show that Thurmand's cocaine sales were relevant conduct. The government argues that Thurmand waived this argument by not raising it in the district court. Arguments not raised during the sentencing hearing are reviewed only for plain error. See United States v. Newman, 148 F.3d 871, 874 (7th Cir1998). In the district court, as here, Thurmand argued that he did not deal cocaine at all. He did not argue that the alleged sales were not part of the same plan or scheme as his marijuana transactions Since Thurmand did not raise his relevant conduct argument in the district court, this court reviews only for plain error. To show plain error, Thurmand must show that the alleged error "affect[s] substantial rights" and "seriously affect[s] the fairness, integrity or reputation of judicial proceedings." Newman, 148 F.3d at 874 (quoting United States v. Olano, 507 U.S. 725, 732 (1993) (alterations in original)).
 
 
 16
 Thurmand's claim fails because the district court did make the required findings. The district court explicitly adopted the factual statements in the PSR, which recite that "[d]uring the course of the conspiracy, the members of the conspiracy, along with other workers, dealt approximately 7.7 kilograms of marijuana, approximately 11.6 kilograms of powder cocaine, and approximately 2.7 kilograms of crack cocaine. The leader of the conspiracy was Dion Thurman [sic]." Moreover, the PSR states that "all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction and are reasonable foreseeable to the defendant" were considered when determining Thurmand's base offense level. A court may adopt the factual findings of the PSR. See United States v. Salinas, 62 F.3d 855, 859 (7th Cir.1995). While the defendant is correct that this court generally insists on explicit relevant conduct findings from the district court,
 
 
 17
 we have been willing to affirm where the record reveals that the district court relied on the recommendations of the PSR and carefully considered the government's theory on the relationship between the offense of conviction and the additional conduct. In other words, where it is clear that the district judge believed the required relationship to be present and the judge's implicit finding is supported by the record, we have been reluctant to remand simply because the judge failed to invoke the "magic words" of section 1B1 3(a)(2).
 
 
 18
 United States v. Patel, 131 F.3d 1195, 1204 (7th Cir1997) (citations omitted). The record in this case shows that the district court believed that the information in the PSR showed that Thurmand was involved in a "very substantial drug operation in this community that went on for quite some time." There was no plain error at sentencing.
 
 
 19
 The judgment of the district court is therefore.
 
 AFFIRMED
 
 
 [1]
 For sentencing purposes, the cocaine quantities were converted to equivalent quantities of marijuana. See U S S G § 2D1 1 n 10 The total drug quantity expressed in terms of marijuana was 51,074 kilograms